UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHN C., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-cv-04111-SLD-JEH |
| | ) |
| ANDREW SAUL, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court are Plaintiff John C.'s Motion for Summary Judgment, ECF No. 13; Defendant Commissioner of the Social Security Administration Andrew Saul's ("the Commissioner") Motion for Summary Affirmance, ECF No. 17; Magistrate Judge Jonathan E. Hawley's Report and Recommendation ("R&R"), ECF No. 20, recommending that the Court grant John's motion, deny the Commissioner's, and remand for further proceedings; and the Commissioner's Objection to the R&R, ECF No. 21. For the following reasons, the Objection is OVERRULED, the R&R is ADOPTED, the Motion for Summary Judgment is GRANTED, and the Motion for Summary Affirmance is DENIED.

BACKGROUND[1]

I.    **Procedural Background**

On June 17, 2016, John filed an application for disability insurance benefits, alleging disability beginning December 23, 2014. His claim was denied initially and upon reconsideration. John then requested a hearing, which took place before an administrative law judge ("ALJ") on January 23, 2018. At the hearing, John amended the date on which he alleged

---

[1] Judge Hawley's R&R provides a detailed summary of the background of this case and the ALJ's decision. *See* R&R 1–6. The administrative record can be found at ECF No. 9. Citations to the record take the form: R. __.

his disability began to June 17, 2016.  The ALJ issued a decision denying John's claim for benefits on May 14, 2018.  The Appeals Council denied his request for review on March 4, 2019; as such, the ALJ's May 14, 2018 decision is the final decision of the Commissioner.  *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).  The Appeals Council extended the time during which a civil action could be filed, and John timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g), Compl. 1, ECF No. 1.  John filed a motion for summary judgment on February 2, 2020, and the Commissioner filed a motion for summary affirmance on April 13, 2020.  The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on October 26, 2020.  The Commissioner timely filed an objection.

## II.     ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4), concluding that John was not disabled during the relevant period.  R. 16.  At step one, he found that John had not engaged in substantial gainful activity since June 17, 2016, the alleged onset date.[2]  *Id*. at 17.  At step two, he found that John had the following severe impairments: coronary arteriosclerosis, status post quintuple coronary artery bypass graft, and obesity.  *Id*. at 18.  At step three, the ALJ found that the severity of John's physical impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*.  Next, he found that John had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), although he could only frequently climb ramps and stairs, frequently climb

---

[2] The ALJ noted that John had worked after the alleged disability onset date but found this to be an unsuccessful work attempt.  R. 18.  He stated that "[i]f these periods of work are considered successful returns to work, [John] has not met the durational criteria," but "[b]ecause the result of continuing analysis of the claim also determines that [John] is not disabled at Step 5, the work activity here is found to be two unsuccessful work attempts with an alternative conclusion given the full analysis of the claim."  *Id*.  These alternatives will be for the agency to address on remand.

2

ladders, ropes, and scaffolds, and frequently stoop, kneel, and crawl and needed to avoid concentrated exposure to extreme cold, heat, humidity, and hazards such as moving machinery and unprotected heights. *Id.* at 19. At step four, the ALJ found that John was unable to perform his past relevant work, which was classified as heavy work. *Id.* at 22. At step five, he found that, considering John's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. *Id.* at 23. Accordingly, the ALJ found that John was not disabled. *Id.* at 24.

## DISCUSSION

### I. Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R within fourteen days of its service. *Id.* 72(b)(2). The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* 72(b)(3). Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied social security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v.*

*Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

**II.     Analysis**

At summary judgment, John argued first that the ALJ erred in his evaluation of John's subjective symptoms and of the combined effect of John's impairments (in particular, the effect of his obesity on his other impairments), Pl.'s Mem. Supp. Summ. J. 4–9, ECF No. 14, and second, that the ALJ's determination at step five was not supported by substantial evidence, *id.* at 9–12. Judge Hawley concludes that the ALJ's assessment of John's subjective symptoms and of the effect John's obesity had on his other impairments was not erroneous, R&R 8–13, but he recommends remanding to the agency for further proceedings because of the Commissioner's failure to meet his burden at step five, *id.* at 1, 13.[3] He finds that the ALJ did not comply with his obligation to obtain a reasonable explanation for the apparent conflict between the testimony of a vocational expert ("VE") that a hypothetical individual with John's RFC could perform the jobs of machine feeder and off-bearer and the definition of these jobs in the Dictionary of Occupational Titles ("DOT"). *Id.* at 13–16. That the VE also suggested a third job—order picker—without such a conflict does not render the ALJ's error harmless to Judge Hawley: the VE testified to the availability of approximately 20,000 order picker jobs in the national

---

[3] While John had the burden of proof in steps one through four, once he showed an inability to perform past work, the burden shifted to the Commissioner to show that John had the ability to engage in some other type of substantial gainful employment existing in a significant quantity in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

economy, which, Judge Hawley determines, "do[es] not amount to work existing in significant numbers." *Id*. at 17–18.

The Commissioner objects to the R&R, arguing that "any error at Step Five [was] harmless where the Commissioner produced evidence of a significant number of order picker jobs that [John] could still perform." Obj. 4. Because neither party objects to Judge Hawley's recommendations regarding the ALJ's consideration of John's subjective symptoms and the combined effect of his impairments, the Court reviews these sections of the R&R for clear error and finds none. The Court will discuss Judge Hawley's finding that the ALJ erred at step five in greater depth.

### a. Conflict between the VE's testimony and the DOT[4]

At step five of the process for evaluating disability, the ALJ determines whether a claimant unable to do past relevant work can do any other work based on his RFC and other characteristics. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The Commissioner is responsible for presenting evidence demonstrating that a claimant can perform work existing in significant numbers in the national economy; such evidence may include testimony by a VE. *Id*. When a VE testifies in front of an ALJ, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the] VE[] . . . and information in the [DOT] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Social Security Ruling ("SSR") 00-4p,[5] 2000 WL 1898704,

---

[4] The Commissioner does not object to Judge Hawley's finding that the VE's testimony as to the jobs of machine feeder and off-bearer conflicted with the DOT, instead asserting that "[t]he sole issue is whether the ALJ was entitled to rely on the vocational expert's testimony that someone with [John's] work-related limitations could still perform the job of order picker, of which there were 20,000 positions in the national economy." Obj. 3. Thus, this finding is reviewed only for clear error. *See Johnson*, 170 F.3d at 739.

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (citation and quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

at *1 (Dec. 4, 2000); *see also Brown v. Colvin*, 845 F.3d 247, 254–55 (7th Cir. 2016) (holding that "if a vocational expert's testimony appears to *conflict* with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict" (quotation marks omitted)). The ALJ must address an apparent conflict even if the claimant fails to object during the hearing. *Brown*, 845 F.3d at 255. "A conflict is apparent if it is so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee*, 649 F.3d at 570 (alteration in original) (quotation marks omitted).

The ALJ found that John had the RFC to perform medium work with certain limitations: he needed to avoid concentrated exposure to extreme cold, heat, humidity, and hazards such as moving machinery and unprotected heights. R. 19. At the hearing regarding John's application for disability benefits, the VE testified that John could not perform his past relevant work but that there were other jobs which a hypothetical person with John's RFC could do. *Id*. at 81. He identified three: machine feeder (listed as Occupational Code Number 699.686-010 in the DOT), off-bearer (921.686-014), and order picker (922.687-058). *Id*. Prior to this testimony, the ALJ confirmed with the VE that he could "assume [the VE's] testimony [was] based on [his] knowledge, education, training, and experience, and consistent with the [DOT] unless [he] t[old the ALJ] otherwise," *id.* at 80, and afterwards, reaffirmed that the VE's testimony had been in accordance with the DOT, *id.* at 82. In the decision denying John benefits, the ALJ noted that, per the VE's testimony, John would be able to perform the requirements for the occupations of machine feeder, off-bearer, and order picker and "determined that the vocational expert's testimony [wa]s consistent with the information contained in the [DOT]." *Id.* at 23–24.

At summary judgment, John "maintain[ed] that there was an obvious conflict between the VE testimony [as to all three potential jobs] and the ALJ's hypothetical and eventual RFC." Pl.'s

Mem. Supp. Summ. J. 9–11. The Commissioner disagreed that there was a conflict. Def.'s Mem. Supp. Mot. Summ. Affirmance 6–9, ECF No. 17-1.

Judge Hawley finds that there is an obvious conflict between the DOT definitions for machine feeder and off-bearer and the VE's testimony that a person with John's RFC could perform those jobs. R&R 14–15. The DOT provides that a machine feeder, in relevant part,

> Feeds or removes metal, plastic, or other stock and material from automatic fabricating machines: Places stock into hoppers, onto conveyors of self-centering machine bed, or lifts coils of sheet metal or wire onto feedrack. Removes stock from conveyor and piles it into boxes, truck, or on feed conveyor for next operation.

U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 699.686-010 (4th ed. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT06F. Because "the DOT description is replete with references to the use of machines and conveyors"—and the title of the job itself includes the word "machine"—Judge Hawley determines that there is an obvious conflict with the VE's testimony, requiring the ALJ to obtain a reasonable explanation. R&R 14.

Likewise, there is an apparent conflict as to the suggested job of off-bearer. *Id*. at 14–15. According to the DOT, a "conveyor feeder-offbearer," in relevant part,

> Feeds and off bears conveyor or conveyor system performing any of following tasks: Picks up materials or products from pallet, handtruck, or dolly, and places materials or products onto conveyor, or opens bins or chutes to dump bulk materials onto conveyor, or hangs products on chain or overhead conveyor, or transfers materials or products from one conveyor to another conveyor, and aligns materials or products on conveyor to prevent jams. Dislodges jams by hand or pole. Removes materials or products from discharge end of conveyor and stacks materials or products on trays, pallets, or handtrucks.

U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 921.686-014 (4th ed. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT09B. Judge Hawley concludes that the continual references to a "conveyor" make the conflict between this definition and the VE's testimony clear. R&R 14–15. For the jobs of both machine feeder and off-bearer,

7

Judge Hawley determines that the ALJ's cursory confirmation with the VE that his testimony was consistent with the DOT does not constitute a "reasonable explanation" for these conflicts. *Id*. at 16.

By its very name, the job of machine feeder obviously involves contact with moving machinery, a fact confirmed by a DOT definition that lists several different ways in which these workers need to interact with machines. Similarly, the job of off-bearer, per the DOT, requires working with conveyor belts. As these job descriptions clearly indicate concentrated exposure to moving machinery, they directly conflict with John's RFC, which prohibits such work. And nothing in the hearing transcript shows that the ALJ "obtain[ed] a reasonable explanation for the apparent conflict" as to either of these jobs, *Brown*, 845 F.3d at 255 (quotation marks omitted)—merely asking the VE to confirm that his testimony is consistent with the DOT is not akin to probing the obvious contradiction between the two. Thus, Judge Hawley's determination that the ALJ erred by failing to obtain a reasonable explanation for the conflict between the DOT and the VE's testimony that an individual with John's RFC could perform the jobs of machine feeder and off-bearer is not clearly erroneous.

### b. Number of Order Picker Jobs in the National Economy

Having eliminated the options of machine feeder and off-bearer, the job of order picker still remains.[6] However, Judge Hawley finds that "the ALJ's failure to resolve the conflict

---

[6] The R&R does not find that there was an obvious conflict between the VE's testimony that John could perform the job of order picker and the DOT definition. R&R 16–17. The DOT description for "laborer, stores" (for which "order picker" is an alternate title) provides that such a worker "[p]erforms any combination of" a variety of tasks "to receive, store, and distribute material, tools, equipment, and products within establishments" and goes on to list several possibilities. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 922.687-058 (4th ed. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT09B. Among these possible tasks are "[c]onvey[ing] materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck" and "[s]ort[ing] and stor[ing] perishable goods in refrigerated rooms." *Id*. John argued at summary judgment that there is a conflict because the order picker "DOT description raises the question of whether the individual would be exposed to extreme temperatures as they would need to sort and store perishable goods in refrigerated rooms" or "whether they would be outside in the winter or summer months" due to

between the VE's testimony and the DOT [as to machine picker and off-bearer] is *not* rendered harmless by the fact that" order picker is still a possibility because the number of order picker jobs in the national economy is not significant. R&R 17–18. The VE testified at the hearing that approximately 20,000 order picker jobs were available in the national economy, R. 81; the ALJ relied on that testimony (and the testimony that there were 16,000 jobs as machine feeder and 20,000 as off-bearer in the national economy) to conclude that John was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," *id*. at 23–24. The ALJ did not question the VE about, nor did he discuss in his decision, whether 20,000 constitutes a significant number of available jobs in the national economy. At summary judgment, John argued that "there is no authority stating that 20,000 jobs in the entire United States, constitutes a significant number." Pl.'s Mem. Supp. Summ. J. 11.[7] Citing several district court cases, and noting the lack of "controlling authority saying otherwise," Judge Hawley determines that "20,000 jobs in the national economy do not amount to work existing in significant numbers in the national economy" and thus that "the Commissioner failed to sustain his burden at Step Five." R&R 17–18.

In his Objection, the Commissioner argues that "[t]he ALJ's reliance on the [VE's] testimony in finding [John] not disabled at Step Five . . . did not run afoul of the Social Security Act, the implementing regulations, or the weigh to court precedent [sic] on the issue of

---

the need to "stand in the receiving area and bring items to storage." Pl.'s Mem. Supp. Summ. J. 10–11. Because the DOT description does not "specif[y] the extent of time to be spent in refrigerated rooms sort[ing] and storing perishable goods or the extent of time to be spent in receiving areas," Judge Hawley finds that "there [is] no conflict between the VE's testimony and the order picker DOT description so obvious that the ALJ should have picked up on it without any assistance." R&R 16–17. The Court agrees with Judge Hawley that nothing in the definition of order picker suggests that John would be required to spend extensive amounts of time in inhospitable environments, and as such, there is no apparent conflict between the DOT and the VE's identification of the job of order picker.
[7] The Commissioner did not address the issue of what constitutes a significant number of jobs in the national economy in his Motion for Summary Affirmance.

significant job numbers." Obj. 3.[8]  He asserts that "it is clear that 20,000 is a significant number," citing Seventh Circuit cases in support of this contention. *Id*. at 2. John counters that all cases binding on this Court cited by the Commissioner discuss what counts as a significant number of jobs only in a regional, not national, context, and he provides additional case citations to support the opposite conclusion. Pl.'s Resp. 1–3, ECF No. 22.

The Seventh Circuit has not affirmatively established the threshold for the number of jobs in the national economy that qualifies as significant. *Cf. Weatherbee*, 649 F.3d at 572 (finding that the availability of 140,000 jobs nationally was "well above the threshold for significance" without identifying the threshold). While the Commissioner cites to two published Seventh Circuit cases in support of his argument that 20,000 is a significant number, they involve regional rather than national numbers. *See* Obj. 2–3 (citing *Lee v. Sullivan*, 988 F.2d 789, 792, 794 (7th Cir. 1993) (finding that 1,400 available jobs in the greater Milwaukee metropolitan area constituted a significant number); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (holding that 4,000 jobs in the Milwaukee area was significant)). The one Seventh Circuit case involving national numbers to which the Commissioner does cite is unpublished and—in deciding that 110,000 jobs was a significant number—cites to *Liskowitz*, a case involving regional numbers, without clarifying the difference between regional and national job numbers. *See* Obj. 3 (citing *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019)).

John points to several district court opinions in the Seventh Circuit involving national numbers, Pl.'s Resp. 2–3, including one that declares that "14,500 is far below any national number of jobs that the Seventh Circuit Court of Appeals has determined to be significant," *James A. v. Saul*, 471 F. Supp. 3d 856, 860 (N.D. Ind. 2020), and another that concludes that

---

[8] Because the Commissioner objects to Judge Hawley's determination that 20,000 jobs in the national economy is not significant, this portion of the R&R is reviewed de novo. *See* Fed. R. Civ. P. 72(b)(3).

120,350 jobs nationally is not a significant number and that "there is no authority stating" otherwise, *Sally S. v. Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. Jul. 23, 2019) ("[I]f SSA is going to deny benefits on the basis that 'a significant number' of jobs exists that this individual could theoretically perform, the agency should actually be held to show by substantial evidence that a true significant number exists."). Other district courts have found numbers above 20,000 to be significant. *See Iversen v. Berryhill*, No. 16 CV 7337, 2017 WL 1848478, at *5 (N.D. Ill. May 8, 2017) (holding that 30,000 jobs in the national economy were significant); *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019) (finding that "positions account[ing] for 40,000 jobs nationally" qualified as a significant number). Judge Hawley locates "just one district court case within this Circuit which determined that a number below 20,000 amounted to a significant number of jobs in the national economy." R&R 17 (citing *Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (determining that 17,700 jobs in the national economy was a significant number)). The Court has not identified any other district court opinions that would be helpful in resolving this issue.

  It is the Commissioner's burden at step five to provide evidence that John was able to perform jobs existing in significant numbers in the national economy. *See Weatherbee*, 649 F.3d at 569. He has not pointed this Court to any binding authority holding that 20,000 jobs are significant, and with district courts coming to varying conclusions, the Court is not persuaded that the number is significant nationally. Thus, the Court agrees with Judge Hawley that 20,000 jobs in the national economy does not qualify as a significant number. Because the Commissioner has not sustained his burden at step five, this case is remanded to the agency for

further testimony from the VE addressing the apparent conflicts discussed above or identifying other jobs without such conflicts.

## CONCLUSION

For the foregoing reasons, Defendant Commissioner of the Social Security Administration Andrew Saul's ("the Commissioner") Objection, ECF No. 21, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's Report and Recommendation, ECF No. 20, is ADOPTED.  Plaintiff John C.'s Motion for Summary Judgment, ECF No. 13, is GRANTED, and the Commissioner's Motion for Summary Affirmance, ECF No. 17, is DENIED.  Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision denying John benefits is REVERSED, and the case is remanded for further proceedings consistent with this order.  The Clerk is directed to enter judgment and close the case.

Entered this 2nd day of March, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE